IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

WILLIAM PARKER,

    Plaintiff,

      v.                CIVIL NO.: WDQ-14-4036

CIENA CORPORATION, *et al.*,

    Defendants.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

William Parker sued Ciena Corporation ("Ciena") and Mark Gorman (collectively, "the Defendants") for employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII")[1] and state law claims.[2] Pending is the Defendants' motion to dismiss the complaint for failure to state a claim. No hearing is necessary. Local Rule 105.6 (D. Md. 2014). For the following reasons, the motion will be granted; however, Parker will be given 30 days to amend Count I of the complaint.

---

[1] 42 U.S.C. §§ 2000e, *et seq.*

[2] 29 U.S.C. §§ 621, *et seq.*

I.   Background[3]

  A. Parker's Employment

    In June 2011, Parker, an African American, began working

for Ciena as its Director of Regional Property Management and

Facilities for the Americas.  ECF No. 1 (hereinafter "Compl.")

at ¶ 6.  Gorman was Parker's immediate supervisor.  *Id.* at ¶ 7.

Before Parker took the position with Ciena, "Gorman made several

representations to Parker, designed to induce his acceptance of

the offer of employment, which did not come to fruition."  *Id.*

"The representations included a full support staff and resources

to effectively complete all assigned tasks and

responsibilities."  *Id.*

    "Based on initial representations, Parker expected to

manage a team of approximately 16 employees[, and]  . . . Parker

[] require[d] these resources to effectively manage projects

in the Americas."  Compl. at ¶ 9.  After Parker began working at

Ciena, he discovered "that he would be forced to satisfy his

---

[3] On a motion to dismiss, the well-pled allegations in the
complaint are accepted as true.  *Brockington v. Boykins*, 637
F.3d 503, 505 (4th Cir. 2011).  The Court will consider the
pleadings, matters of public record, and documents attached to
the motions that are integral to the complaint and whose
authenticity is not disputed.  *See Philips v. Pitt Cnty. Mem'l
Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

position duties and responsibilities without support."[4]  Compl.

at ¶¶ 8-9.  Gorman transitioned employees off of Parker's team

because Ciena implemented a "first generation outsourcing of the

Facility Management function of the organization."  Parker was

originally informed that he could hire three staff members "in

support of the new organization model."  *Id.* at ¶ 9.  However,

"[u]pon the conclusion of the transition, Gorman left Parker

with a single resource to assist in an overwhelming workload."

*Id.*  "Ultimately, Gorman took even that resource (an

administrative assistant) away, requiring in 2012 that the

resource report directly to Gorman and not Parker."  *Id.*

     Parker complained to Gorman about the lack of resources

in his department, and "Gorman, at one point, agreed to seek

candidates to support Parker, but did not allow Parker to

interview or vet the candidates."  Compl. at ¶ 10.  "Gorman

[also] told Parker that he did not want Parker to hire 'someone

like him.'"[5]  *Id.*  Gorman interviewed several candidates, but

---

[4] Parker also alleges that "[i]n the first eighteen months of his
employment, it became clear that Gorman did not believe Parker,
as an African American, should be in a position to supervise any
Ciena personnel."  Compl. at ¶ 8.  However, on a motion to
dismiss, the Court cannot credit such a conclusionary statement
without factual support.  *See Bell Atl. Corp. v. Twombly*, 550
U.S. 544, 555 (2007).

[5] Parker asserts that "[g]iven Parker's exemplary performance and
exceptional efforts in completing his assignments, the comment
was made to indicate that Gorman did not want other African
American candidates."  Compl. at ¶ 10.

"Parker found they did not possess the qualifications necessary to support him in his role as Director." *Id.* at ¶ 11.  Gorman hired new employees, who were all white, and required that the employees report directly to him and not Parker. *Id.*  Moreover, "Gorman did not allow Parker to supervise the new hires . . . and worked directly with the new hires, usurping Parker's authority as Director and cutting him out of the loop." *Id.*

According to Parker, "Gorman did not treat Parker's Caucasian peers or counterparts in similar fashion." Compl. at ¶ 12.  These "peers and counterparts" "were permitted to hire and select their own staff . . ., were fully staffed, resourced and in prime position to carry their varied duties and responsibilities." *Id.*  Parker provides one alleged example:

> Gorman gave David Bains full authority to hire the necessary staff to support his efforts.  He, unlike Parker, frequently received bonuses as a result of having the full complement of resources and Gorman's support.
>
> Gorman indicated on several occasions that Parker should emulate Mr. Bains' management style and learn to delegate more so he could focus on being more strategic.  This of course was impossible given that Parker did not have a single direct report.  Parker queried but never received an acceptable response from Gorman regarding the identity of individuals to whom he would delegate his responsibilities.

*Id.* at ¶¶ 13-14.

To counter his lack of resources, "Parker worked an average of 80-hour work weeks, frequently working more than 100 hours

4

in a week in order to accomplish and complete tasks." Compl. at ¶ 15. "By contrast, Parker observed that his Caucasian counterparts were not similarly over-worked or overtasked and often received bonuses and additional compensation for substantially less effort." *Id.*

"Gorman also ensured that his mistakes and short-comings were placed at Parker's feet." Compl. at ¶ 16. Parker details a time when Gorman allegedly made a project go over budget, but "falsely informed upper management that the overruns were as a result of Parker's management and not his own decision-making." *Id.* Gorman "often stepped in on projects initially assigned to Parker, indicated he was taking the lead, [and] return[ed] responsibility back to Parker only when Gorman's sole decision-making and activities went awry." *Id.* at ¶ 17. Additionally, "Gorman engaged in a pattern of verbal abuse." *Id.* at ¶ 21. During one meeting, Gorman allegedly threatened to "punch [Parker] in the face." *Id.* "Gorman also engaged in demeaning verbal assaults and comments." *Id.*

In January 2013, Gorman gave Parker a negative performance review, which "curtailed both Parker's advancement opportunities with the company and the opportunities to receive bonuses or additional compensation." Compl. at ¶ 18. During the rating period, Parker had "received an accolade from the company CEO . . . [however,] neither this accolade nor the others received as

5

a result of his hard work and efforts were reflected in the performance rating." *Id.*

In May 2013, Gorman and Parker met for Parker's mid-year performance review. Compl. at ¶ 19. Parker informed Gorman that Gorman's expectations could not be met without an adequate staff, but "Gorman indicated that Parker would be expected to move forward without the resources." *Id.* "Parker's Caucasian counterparts were not similarly treated." *Id.* Parker "raised his concerns with upper management, David Rothenstein and Krisie Matevish." *Id.* at ¶ 20. They "indicated that they would look into Parker's allegations regarding the unfairly low performance appraisal, resource concerns and Gorman's general treatment of Parker." *Id.* "Neither, however, followed up with Parker regarding his concerns." *Id.*

In June 2013, Parker again informed Gorman that Parker could not complete his responsibilities without more resources. Compl. at ¶ 22. Parker also requested "that the Human Resources office become involved in order to determine a way forward." *Id.* That same month, Matevish and Gorman informed Parker that his position at Ciena was being eliminated, and Parker would be terminated as of July 12, 2013. *Id.* at ¶ 24. According to Parker, "[t]he reasons supporting the elimination of Parker's position also supported elimination of [] Bains' position. In fact, had the reasons given Parker been sound, they would have

compelled the elimination of [] Bains' position." *Id*. Instead, Bains was promoted to the position of Senior Director of Global Facilities and Operations. *Id*.

After Parker's termination, Ciena advertised for two open positions, which Parker alleges would have been support positions for his old position. Compl. at ¶ 24. "Had these individuals been hired during his tenure, Parker would have [allegedly] been in a better position to excel."[6] *Id*.

B. Procedural History

On December 30, 2014, Parker sued the Defendants for federal race discrimination and retaliation and state law claims.[7] ECF No. 1. On March 23, 2015, the Defendants moved to dismiss the complaint for failure to state a claim under Rule 12(b)(6). ECF No. 11. On April 23, 2015, Parker opposed the motion. ECF No. 12. On May 14, 2015, the Defendants replied. ECF No. 13.

---

[6] Parker asserts, "upon information and belief" that the two new employees were "Caucasian and directly reported to Gorman." Compl. at ¶ 24.

[7] The three state law claims are negligent supervision, retention, and hiring (against Ciena); intentional infliction of emotional distress (against Gorman); and tortious interference with prospective advantage (against all Defendants). ECF No. 1.

II.  Analysis

  A. Legal Standard

     Under Fed. R. Civ. P. 12(b)(6), an action can be dismissed
for failure to state a claim upon which relief can be granted.
Rule 12(b)(6) tests the legal sufficiency of a complaint, but
does not "resolve contests surrounding the facts, the merits of
a claim, or the applicability of defenses." *Presley v. City of
Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

     The Court bears in mind that Rule 8(a)(2) requires only a
"short and plain statement of the claim showing that the pleader
is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l
Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001).  Although Rule 8's
notice-pleading requirements are "not onerous," the plaintiff
must allege facts that support each element of the claim
advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761,
764-65 (4th Cir. 2003).  These facts must be sufficient to
"state a claim to relief that is plausible on its face." *Bell
Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

     This requires that the plaintiff do more than "plead[]
facts that are 'merely consistent with a defendant's
liability'"; the facts pled must "allow[] the court to draw the
reasonable inference that the defendant is liable for the
misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678
(2009) (*quoting Twombly*, 550 U.S. at 557).  The complaint must

8

not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks and alteration omitted).

B. The Defendants' Motion to Dismiss

1. Federal Race Discrimination Claim

At trial, a plaintiff can prove his employer's discrimination through one of two methods. *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004). First, he may use "any direct or indirect evidence relevant to and sufficiently probative of the issue," under "ordinary principles of proof." *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (internal quotation marks omitted). Absent direct evidence of discrimination, the Court applies the burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, the plaintiff must first establish a prima facie case of discrimination. *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010). To establish a *prima facie* case of employment discrimination, Parker must show 1) he is a member of a protected class, 2) he suffered an adverse employment action, 3) at the time of the action, he was meeting his employer's legitimate expectations,

and 4) he was treated differently from other similarly situated persons who were not members of the protected class. *Hill*, 354 F.3d at 285; *Pulley v. KPMG Consulting, Inc.*, 348 F. Supp. 2d 388, 394 (D. Md. 2004).

In *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 510, 515 (2002), the Supreme Court held that "an employment discrimination plaintiff need not plead a prima facie case of discrimination . . . to survive [a] motion to dismiss," because "[t]he prima facie case . . . is an evidentiary standard, not a pleading requirement." Applying *McDonnell Douglas* to Rule 12(b)(6) motions would establish a "heightened pleading standard" contravening Rule 8(a)(2). *Id.* at 512. *Swierkiewicz*, however, was decided before *Iqbal* and *Twombley*.

In *McCleary-Evans v. Md. Dept. of Transp.*, 780 F.3d 582, 583 (4th Cir. 2015), the Fourth Circuit reexamined the pleading standard for discrimination cases in light of *Iqbal* and *Twombly*. McCleary-Evans had applied for two positions in the Maryland Highway Administration's Environmental Compliance Division. *Id.* "Despite her prior work experience and education, which she alleged made her 'more than qualified' for the two positions, she was not selected for either position. Instead, as the complaint asserted, 'The positions in question were filled by non-Black candidates.'" *Id.* McCleary-Evans alleged that she was not hired because her applications were

> subject to a review panel significantly influenced and
> controlled by . . . Gregory Keenan, a White male in
> the Office of Environmental Design ('OED') who worked
> under the supervision of OED Director, Sonal Sangahvi,
> a non-Black woman . . . [and] [d]uring the course of
> her interview, and based upon the history of hires
> within OED, . .. both Keenan and Sangahvi
> predetermined to select for both positions a White
> male or female candidate.

*Id.* She also alleged that, "'although African American

candidates had been among the selection pool,' 'Keenan and

Sangahvi, for reasons of race and gender, overlooked the African

American candidates to select White male, preferably, and White

female candidates.'" *Id.* at 583-84. The district court granted

the defendant's motion to dismiss the complaint because

McCleary-Evans had not "stated facts sufficient to meet the

pleading requirements as to the fourth prong" of *McDonnell*

*Douglas.* *Id.* at 584.

On appeal, the Fourth Circuit found that *Swierkiewicz*

remained binding precedent, and the "the district court erred in

its analysis by requiring [the plaintiff] to plead facts

establishing a prima facie case of discrimination to survive a

motion to dismiss." *Id.* at 585. However, the Fourth Circuit

held that *McCleary-Evans* was properly dismissed under the

standards of *Twombly.* The Fourth Circuit reasoned that,

although a plaintiff need not plead a *prima facie* case of

discrimination, she must still state a claim that "is *plausible*

on its face." *McCleary-Evans*, 780 F.3d at 585 (quoting *Iqbal,*

11

556 U.S. at 678).  Therefore, to state a plausible claim of

discrimination, a plaintiff is "required to allege facts to

satisfy the elements of a cause of action created by that

statute."  *Id.*

McCleary-Evans failed to allege that "the Highway

Administration 'fail[ed] or refus[ed] to hire' her *because of*

[her] race . . . [or] sex.'"  *Id.* (alterations in original).

> [S]he alleged that "[d]uring the course of her
> interview, and based upon the history of hires within
> [the Office of Environmental Design], . . . both
> Keenan and Sangahvi predetermined to select for both
> positions a White male or female candidate."  But she
> alleged no factual basis for what happened "during the
> course of her interview" to support the alleged
> conclusion. The allegation that the Highway
> Administration did not hire her because its decision
> makers were biased is simply too conclusory. Only
> speculation can fill the gaps in her complaint—
> speculation as to why two "non-Black candidates" were
> selected to fill the positions instead of her. While
> the allegation that non-Black decisionmakers hired
> non-Black applicants instead of the plaintiff is
> *consistent* with discrimination, it does not alone
> support a *reasonable inference* that the decisionmakers
> were motivated by bias. McCleary-Evans can only
> speculate that the persons hired were not better
> qualified, or did not perform better during their
> interviews, or were not better suited based on
> experience and personality for the positions. In
> short, McCleary-Evans' complaint "stop[ped] short of
> the line between possibility and plausibility of
> entitlement to relief."

*Id.* at 585-86 (quoting *Iqbal,* 556 U.S. at 678-79) (internal

citations omitted).

In this case, like McCleary-Evans, Parker has failed to allege that Gorman's treatment of Parker was *because of* his race.[8]  The complaint details Gorman's negative behavior toward Parker spanning several years.  However, Parker's allegations supporting Gorman's *motivations* for these actions are insufficient.  Throughout the complaint, Parker makes conclusionary statements such as, "it became clear that Gorman did not believe Parker, as an African American," or "the comment was made to indicate that Gorman did not want other African American candidates."  Parker's "subjective belief of discrimination, however genuine, [cannot] be the basis of judicial relief."  *Elliott v. Group Medical & Surgical Service,* 714 F.2d 556, 557 (5th Cir. 1983) (*quoted in Moore v. Reese,* 817 F. Supp. 1290, 1295 (D. Md. 1993).

The only facts in the complaint addressing racial motivation, are Parker's allegations regarding his white "peers and counterparts."  *See* Compl. at ¶¶ 12-14.  Parker's conclusionary allegations that he was treated differently are not sufficient to survive a motion to dismiss.  As was the case in *McCleary-Evans*, while such allegations are "*consistent* with discrimination, [they] do[] not alone support a *reasonable*

---

[8] In Title VII suits, a plaintiff must allege sufficient facts to establish that race was a *motivating factor* for the adverse employment action.  *See Desert Palace, Inc. v. Costa,* 539 U.S. 90, 101 (2003).

*inference* that the decisionmakers were motivated by bias."
*McCleary-Evans*, 780 F.3d at 585-86.[9]

Parker does alleged one specific comparator--David Bains.
*See* Compl. at ¶¶ 12-14.  The complaint, however, contains no
information from which to infer that Bains was similarly
situated to Parker.  *See Coleman v. Md. Ct. of Appeals*, 626 F.3d
187, 191 (4th Cir. 2010) ("However, the complaint fails to
establish a plausible basis for believing Broccolina and Coleman
were actually similarly situated or that race was the true basis
for Coleman's termination.  The complaint does not even allege
that  . . .  any impropriety was comparable to the acts Coleman

---

[9] *See also Kamatta v. Burwell*, 2015 WL 4548615, at *4-5 (D. Md.
July 27, 2015) (allegations that supervisor "treat[ed] [the
plaintiff] differently than other staff" and "no other employee
or Committee member was yelled at or harassed" were insufficient
to state a plausible discrimination claim); *Fletcher v. Philip
Morris USA Inc.*, 2009 WL 2067807, at *6 (E.D. Va. July 14, 2009)
("Plaintiff's Amended Complaint falls short of plausibility,
however, because it is devoid of any specific factual
allegations that similarly situated employees, who are not
members of a protected class, received more favorable treatment
than Plaintiff or that Defendants acted with discriminatory
intent. Plaintiff's Amended Complaint generally alleges that
blacks, and black males in particular, are regularly
discriminated against at Philip Morris. To support this
allegation, the Amended Complaint describes eight incidents of
alleged discrimination or disparate treatment by employees at
Philip Morris. The only attempts Plaintiff makes to compare his
*specific* situation to another similarly situated employee,
however, is to make the conclusory allegations that "similarly
situated whites, females and non-black males" were treated
differently than Plaintiff, or that he has never heard of a
particular action, such as a vice president attending an
evaluation meeting of a supervisor's subordinate, happening to
another employee.").

was alleged to have committed. *Absent such support, the complaint's allegations of race discrimination do not rise above speculation.*") (emphasis added).  Without citing case law in support, Parker argues that "arguments that the individuals are not true counterparts or peers or are otherwise not similarly situated are not appropriate on a motion pursuant to Rule 12(b)(6)."  ECF No. 12-1 at 7.  Although in-depth factual analysis is generally inappropriate on a motion to dismiss, a plaintiff is still required to state sufficient facts to support a plausible claim.  Multiple courts in this circuit have dismissed complaints that have failed to adequately establish the alleged comparators were similar.  *See, e.g.*, *Sawyers v. UPS*, 946 F. Supp. 2d 432, 442 (D. Md. 2013); *Crawford v. Dep't of Correctional Educ.*, 2011 WL 5975254, at *6-7 (E.D. Va. Nov. 29, 2011).

Parker has "alleged no factual basis . . . to support [his] alleged conclusion" that Gorman's actions were motivated by racial bias.  *McCleary-Evans*, 780 F.3d at 585-86.  "Only speculation can fill the gaps in [his] complaint . . . ."  *Id.* Therefore, the Court must grant the motion to dismiss.  However, the Court recognizes that specific facts about Bains and the other alleged comparators may revive Parker's claim. Accordingly, the Court will grant Parker 30 days in which to

amend his race discrimination claim.[10]  If Parker fails to amend the complaint in that time, the substantive discrimination claim will be dismissed with prejudice.

2. Federal Retaliation Claim

Parker alleges that the Defendants "terminated [his] employment in retaliation for his complaints against the discriminatory acts of [] Gorman." Compl. at ¶ 30.  To establish a *prima facie* case of retaliation, a plaintiff must show 1) that he engaged in a protected activity; 2) his employer took an adverse employment action against him; and 3) there was a causal link between the protected activity and adverse action.[11] *EEOC v. Navy Fed. Credit Union,* 424 F.3d 397, 406 (4th 2005).

The Defendants argue that Parker has failed to allege that he engaged in a protected activity.  ECF No. 11-1 at 8-9.  There are two categories of protected activity -- opposition and

---

[10] Federal Rule of Civil Procedure 15(a)(2) instructs that leave to amend should be freely given when justice requires.  Leave should be denied only when amendment would unduly prejudice the opposing party, amount to futility, or reward the movant's bad faith.  *See Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008); *Equal Rights Ctr. v. Niles Bolton Associates*, 602 F.3d 597, 603 (4th Cir. 2010).

[11] Because retaliation claims under Title VII are also subject to the *McDonnel-Douglas* burden shifting framework, the Supreme Court's holding in *Swierkiewicz v. Sorema N.A.,* applies equally to this claim.  *See* 534 U.S. at 510, 515 ("[A]n employment discrimination plaintiff need not plead a prima facie case of discrimination . . . to survive [a] motion to dismiss," because "[t]he prima facie case . . . is an evidentiary standard, not a pleading requirement.").  Parker, however, must still state a plausible claim for relief.

participation. *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). Participation includes "making a charge, testifying, assisting, or participating in an investigation, proceeding, or hearing." *Betof v. Suburban Hosp.*, No. DKC-11-1452, 2012 WL 2564781, at *10 (D. Md. June 29, 2012). Opposition is a much broader category and includes "staging informal protests and voicing one's own opinions in order to bring attention to an employer's discriminatory activities,"[12] or "complain[ing] to [] superiors about suspected violations . . . ."[13]

The complaint states that after receiving his mid-year performance review, Parker "raised his concerns with upper management," and they "indicated that they would look into Parker's allegations regarding the unfairly low performance appraisal, resource concerns and Gorman's general treatment of Parker." Compl. at ¶ 20. "Mere complaints about unfair treatment are not protected activity." *Rodriguez v. Cellco P'ship*, 2012 WL 2904809, at *4 (D. Md. July 13, 2012). The complaint does not allege that Parker complained of racial discrimination by Gorman. Accordingly, Parker has failed to allege that he engaged in a protected activity, and the Court

---

[12] *Laughlin,* 149 F.3d at 259.

[13] *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 543-44 (4th Cir. 2003).

will grant the motion to dismiss.  *See id.; Miller v. Amer.
Family Mut. Ins. Co.*, 203 F.3d 997, 1007-08 (7th Cir. 2000) ("An
employee can honestly believe she is the object of
discrimination, but if she never mentions it, a claim of
retaliation is not implicated, for an employer cannot retaliate
when it is unaware of any complaints."); *Hemphill v. UPS, Inc.*,
975 F. Supp. 2d 548, 560 (D.S.C. 2013) ("Although Title VII does
not protect general complaints of unfair treatment, "an
employee's complaint constitutes protected activity when the
employer understood, or should have understood, that the
plaintiff was opposing discriminatory conduct.") (quoting *Burgess
v. Bowen,* 466 Fed. App'x. 272, 282 (4th Cir. 2012)).

3. Maryland Negligent Supervision Claim

For his first state law claim, Parker alleges that "Ciena
[] knew or should have known by the exercise of diligence and
reasonable care that [] Gorman was capable of inflicting mental
anguish and harm against [Parker] based on his repeat and
numerous complaints regarding Gorman's conduct to upper
management."  Compl. at ¶ 34.  A claim for negligent supervision
requires a plaintiff to establish:

> that [his] injury was caused by the tortious
> conduct of a coworker, that the employer knew or
> should have known by the exercise of diligence and
> reasonable care that the coworker was capable of
> inflicting harm of some type, that the employer failed
> to use proper care in selecting, supervising or
> retaining that employee, and that the employer's

> breach of its duty was the proximate cause of the
> Plaintiff's injuries.

*Bryant v. Better Business Bureau,* 923 F. Supp. 720, 751 (D. Md.

1996) (citations omitted).  "[N]egligent supervision claims

'existed at common law' in Maryland and therefore 'may only be

predicated on common law causes of action.'"  *Braxton v.*

*Domino's Pizza LLC*, 2006 WL 3780894, at *4 (D. Md. Dec. 21,

2006) (quoting *Demby v. Preston Trucking Co., Inc.,* 961 F. Supp.

873, 881-82 (D. Md. 1997)).  Thus, an action under Title VII

cannot provide the basis for a negligent supervision claim under

Maryland law.  *See Brown v. The Marjack Co.*, 2010 WL 419389, at

*6 (D. Md. Jan. 29, 2010).

Here, Parker concedes that his negligent supervision claims

cannot rely on his Title VII claims.  *See* ECF No. 12-1 at 10-11.

Instead, the complaint premises Ciena's liability on Gorman's

intentional infliction of emotional distress.[14]  *See* Compl. at ¶

---

[14] In the opposition, Parker asserts that he has "also pled facts
sufficient to support a negligent misrepresentation or fraud in
the inducement claim but did not assert actual counts in his
complaint.  These common law theories, however, also serve to
support his negligent supervision claim." ECF No. 12-1 at 11 n.
3.  Parker's assertion that he has established multiple common
law torts is without merit.  The complaint clearly premises
Ciena's liability on negligent infliction of emotional distress.
"It is axiomatic . . . that the complaint may not be amended by
the briefs in opposition to a motion to dismiss." *Redding v.*
*Ameriprise Auto & Home Ins.*, 2012 WL 1268327, at *4 n. 6 (D. Md.
Apr.13, 2012) (*quoting Car Carriers, Inc. v. Ford Motor Co.*, 745
F.2d 1101, 1107 (7th Cir. 1984) (internal quotations omitted));
*see, e.g., Presley*, 464 F.3d at 483 ("The purpose of Rule
12(b)(6) is to test the sufficiency of a complaint [.]")

34.   For reasons that will be discussed, however, Parker has
failed to state a claim for intentional infliction of emotional
distress.

Moreover, a plaintiff alleging negligent supervision must
show that "the employer knew or should have known that the
individual was potentially dangerous." *Bryant,* 923 F. Supp. at
751.   General allegations to supervisors about "unfairly low
performance appraisal, resource concerns and Gorman's general
treatment"[15] do not provide a reasonable basis for an employer to
conclude that Gorman was "potentially dangerous" and capable of
intentional infliction of emotional distress.   Expanding
negligent supervision claims to cover such facts would allow
every employee who ever complained generally about a
supervisor's actions to make a negligence claim against the
employer.

Accordingly, Parker's negligence claim against Ciena must
also fail.

---

(emphasis added) (internal quotations and punctuation omitted).
Even if the Court were to consider Parker's assertion, a bare
allegation that Gorman told Parker that Parker would have
support at Ciena which Parker did not receive is not sufficient
to sustain claims of negligent misrepresentation or fraud in the
inducement, particularly because actions sounding in fraud must
meet the heightened pleading standard of Rule 9(b).

[15] Compl. at ¶ 20.

4. Maryland Intentional Infliction of Emotional Distress
   Claim

To state a claim for IIED, a plaintiff must show four elements: (1) intentional or reckless conduct; (2) that is "extreme and outrageous"; (3) a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress is "severe." *Lasater v. Guttmann*, 5 A.3d 79, 89 (Md. Ct. Spec. App. 2010) (internal quotation marks omitted). "Extreme and outrageous" conduct is conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (internal quotation marks omitted). "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as extreme and outrageous; where reasonable men may differ, it is for the jury to determine . . . ." *Harris v. Jones*, 380 A.2d 611, 615 (Md. 1977).

In the past, this Court has emphasized that "[i]n the 30 years since the Maryland Court of Appeals first recognized IIED as a cognizable tort, it has upheld such claims only [on rare occasions]." *Taylor v. Anne Arundel Cnty.*, 2013 WL 4451221, at *5 (D. Md. Aug. 15, 2013).[16] "As inappropriate and repulsive as

---

[16] *See also Faya v. Almaraz*, 620 A.2d 327 (Md. 1993) (reversing dismissal when HIV-positive surgeon operated on the appellants without their knowledge of his disease); *Figueiredo-Torres v.*

workplace harassment is, such execrable behavior almost never rises to the level of outrageousness, and almost never results in such severely debilitating emotional trauma, as to reach the high threshold invariably applicable to a claim of intentional infliction of emotional distress under Maryland law." *Arbabi v. Fred Meyers, Inc.*, 205 F. Supp. 2d 462, 466 (D. Md. 2002); *compare Rubino v. New Acton Mobile Indus., LLC*, 2014 WL 4267493 (D. Md. Aug. 27, 2014) (complaint was sufficient to state an intentional infliction of emotional distress claim where the plaintiff warned employer of his depression, and the employer purposefully and violently took advantage of the plaintiff's susceptibility)*, with Beye v. Bureau of Nat'l Affairs*, 477 A.2d 1197, 1204-06 (Md. Ct. Sp. App. 1984) (employer who gave poor performance reviews, refused to promote the plaintiff, and forced plaintiff to resign was not liable for intentional infliction of emotional distress).

---

*Nickel*, 584 A.2d 69 (Md. 1991) (reversing dismissal when plaintiff alleged psychologist engaged in sexual relations with plaintiff's wife during the time he was counseling the couple); *B.N. v. K.K.*, 538 A.2d 1175 (Md. 1988) (cause of action for IIED could exist when physician had sex with nurse without informing her he had herpes and infected her with the disease); *Young v. Hartford Accident & Indem. Co.*, 492 A.2d 1270 (Md. 1985) (reversing dismissal when workers' compensation insurer insisted that claimant submit to psychiatric evaluation for the "sole purpose" of harassing her and forcing her to drop her claim or commit suicide)).

Here, accepting the well-pled allegations of the complaint as true, Parker has failed to alleged that Gorman's conduct was so extreme or outrageous as to be actionable under Maryland law.[17]   *See Beye*, 477 A.2d AT 1204-06; *Harris*, 380 A.2d at 615; *see also Hamilton v. Ford Motor Credit Co.*, 502 A.2d 1057, 1064 (Md. Ct. Spec. App. 1986) (to be extreme and outrageous, conduct must "strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung"; conduct that is "rude, insensitive, callous, and in poor taste" does not suffice").   Accordingly, the Court will grant the motion to dismiss on the intentional infliction of emotional distress claim.

5. Maryland Tortious Interference with Prospective Advantage Claim

Finally, Parker alleges that the Defendants tortuously interfered with his prospective business advantage by "thwarting his ability to earn bonuses and enhanced compensation from Ciena

---

[17] In his opposition, Parker has requested "to add allegations regarding the sleepless nights he suffered wondering how his son would be able to go to college or whether he and his wife could find work after leaving everything in North Carolina for this position.  Parker would like to amend the complaint to add facts about the effects of the stress from the situation during his employment and after his termination on his family and other relationships.  Parker would like to amend to allege facts concerning how the shock of Gorman's conduct left him paralyzed emotionally for a time and the time it took to recover from the conduct to which Gorman and Ciena subjected Parker."  ECF No. 12-1 at 12-13.  None of these facts makes Gorman's conduct extreme or outrageous.  Because any amendment would be futile, the Court will not grant leave to amend this claim.

Corporation and impacting his ability to find alternate employment," alleging that the Defendants "gave false information to potential employers with whom Plaintiff sought a position following his employment with Ciena." Compl. at ¶ 47.

To state a claim for tortious interference with business relationships, a plaintiff must allege "(1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *Bagwell v. Peninsula Reg'l Med. Ctr.*, 510, 665 A.2d 297, 314 (Md. Ct. Spec. App. 1995) (internal quotation omitted). "[W]rongful or malicious interference with economic relations is interference by conduct that is independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships. Wrongful or unlawful acts include common law torts and 'violence or intimidation, defamation, injurious falsehood or other fraud, violation of criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith.'" *Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.*, 650 A.2d 260, 271 (Md. 1994) (quoting *K & K Management v. Lee,* 557 A.2d 965, 979 (Md. 1989)).

24

First, Parker alleges that the Defendants denied him the opportunity to earn bonuses.  Under Maryland law, however, "[r]ecovery for intentional interference with an economic relationship is barred when the plaintiff and defendant are both parties to the economic relationship.  A plaintiff also cannot recover against a defendant's employee acting within the scope of his or her employment."  *Hejirika v. Md. Div. of Correction*, 264 F. Supp. 2d 341, 347 (D. Md. 2003).  Therefore, the Defendants' denial of bonuses cannot support Parker's claim.[18]

Parker next asserts that the Defendants interfered with his ability to find another job by providing "false information to potential employers."  Parker provides no information about how these communications were made or to whom.  A plaintiff alleging tortious interference "must identify a possible future

---

[18] In his opposition, Parker attempts to revive this claim by arguing that Gorman was acting outside the scope of his employment.  *See* ECF No. 12-1 at 13-15.  Parker, however, also apparently concedes that the complaint is devoid of facts supporting this argument, requesting leave to amend to "add this aspect."  *See id.*

"[A]n employee suing a fellow employee for tortious interference must allege that the defendant employee 'acted maliciously for his own motives and beyond the scope of his authority without the intent to further the interests of the employer.'"  *Hejirika*, 264 F. Supp. at 347 (quoting *Pope v. Bd. of Sch. Comm'rs,* 665 A.2d 713, 719 (Md. Ct. Spec. App. 1995)).  Parker has supplied no facts in his complaint or with his request to amend which could support such a showing.  Therefore, the Court will not grant leave to amend.  Further, even if Parker were able to support such a claim, Ciena would not be liable for any actions of Gorman made outside the scope of employment.

relationship which is likely to occur, absent the interference, with specificity." *Baron Fin. Corp. v. Natanzon*, 471 F. Supp. 2d 535, 542 (D. Md. 2006). There is simply no information in the complaint to support causation, and a conclusionary statement by Parker that he "suffered and will continue to suffer irreparable harm, pecuniary losses, emotional and mental stress and anguish and cannot be made whole absent judicial intervention" does not meet the pleading standards. *See Med. Mut. Liab. Soc. of Md. v. B. Dixon Evander and Assocs., Inc.*, 660 A.2d 433, 439-41 (Md. 1995) (discussing causation). Accordingly, the Court must dismiss this claim. *See Marrs v. Marriott Corp.*, 830 F. Supp. 274, 283-84 (D. Md. 1992) (rejecting tortious interference claim when plaintiff was "unable to identify any specific statement made by any Defendant to any potential employer.").

III. Conclusion

For the reasons stated above, the Court will dismiss Parker's race discrimination claim without prejudice and provide Parker with 30 days in which to amend the complaint; all other claims will be dismissed with prejudice.

1/12/16
_____
Date

_____
William D. Quarles, Jr.
United States District Judge